IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CITY OF MARION, ILL., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12–cv–0999–SCW |
| | ) |
| U.S. SPECIALTY INS. CO., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM & ORDER

**WILLIAMS, Magistrate Judge:**

This case—an insurance coverage dispute between the City of Marion, Illinois (the City) and its insurer, U.S. Specialty Insurance Co. (USSIC)—was fully referred to the undersigned magistrate judge by the consent of the parties pursuant to 28 U.S.C. § 636(c). The matter comes before the Court on USSIC's Motion for Summary Judgment. For the following reasons, the motion (Doc. 14) is **GRANTED**.

### FACTUAL & PROCEDURAL BACKGROUND

USSIC was the City's general liability insurer when, in 2008, the Marion Community School District No. 2 sued the City for wrongfully withholding tax revenues to which the School District was entitled. **(Doc. 2, Ex. 1, p. 3).** The School District's eleven-count lawsuit sought the return of tax revenue, which the City allegedly deprived the district due to violation of Illinois Tax Increment Allocation Financing Redevelopment ("TIF") Act. (hereinafter, "the underlying suit"). When the City received service on the lawsuit, they timely notified USSIC, and USSIC appointed counsel. **(Doc. 2, Ex. 1, p. 3).** The City's counsel, Mr. Osman, also entered an appearance. **(Doc. 2, Ex. 1, p. 3).** At no time did USSIC issue a reservation of rights statement. **(Doc. 16).** After USSIC's appointed counsel entered their appearance, USSIC determined that no coverage was available for

1

this claim and declined to continue to provide a defense. **(Ex. B).** Their attorney withdrew. **(Doc. 2, Ex. 1, p. 4).** Mr. Osman continued to defend the City and the lawsuit eventually settled in April 2012. The City then filed the present lawsuit seeking compensation for its legal fees and costs of settlement. **(Doc. 2, Ex. 1, p. 6).**

On November 19, 2012, USSIC filed a Motion for Summary Judgment arguing that they had no duty to defend the underlying case. **(Doc 14).** Their arguments were based on policy language that specifically precluded coverage for certain kinds of losses. Specifically, the policy provides that USSIC agreed to pay all "**LOSS** that the **INSURED** shall be legally obligated to pay resulting from a **WRONGFUL ACT:**"

> **INSURING AGREEMENTS:**
>
> > **WE** will pay on behalf of the **INSURED** all **LOSS** that the **INSURED** shall be legally obligated to pay resulting from a **WRONGFUL ACT** but only with respect made to **CLAIMS** first made against the **INSURED** during the **POLICY PERIOD** . . . .

**(Ex. A to Countercl., at USSIC 00021).** The USSIC policy defines **WRONGFUL ACT** as:

> Any alleged or actual:
>
> > 1. Act, error, misstatement, misleading statement, or omission of an **INSURED** constituting a breach of duty imposed by law . . .that arises out of the discharge of duties for the **NAMED INSURED**, individually or collectively.

**(Ex. A to Countercl., at USCIC 00021)**.

The policy goes on to define loss as:

> **LOSS** – means any compensatory monetary amount, including punitive damages where permitted by law, for which the **INSURED(s)** is legally obligated to pay as a result of **WRONGFUL ACT(S)** covered by this policy shall include, but not be limited to, judgments and settlements. **LOSS** shall not include:
> > \*   \*   \*
> > 4.  Return of taxes, assessments, penalties, fines.
> > \*   \*   \*
> > 6.  Matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**(Ex. A to Countercl. at USSIC 00046)**.

The parties subsequently agreed that this language would bar indemnity for return of the tax money at a hearing on this matter.

In its response motion, the City argued that, because USSIC did not seek a declaration of rights under the policy, it should be estopped from asserting any defenses based on the policy. **(Doc. 17).** But at the January 31 hearing, the parties agreed that the issue of whether estoppel applies need only be reached if the Court finds that USSIC had a duty to defend the City in the underlying lawsuit. ***See also Employers Ins. of Wausau v. Elcho Liquidating Trust*, 708 N.E.2d 1122, 1135 ("The estoppel doctrine applies only where an insurer has breached its duty to defend. . . Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend . . .")**. The Court also briefly notes that the Seventh Circuit has found this argument to be "frivolous." ***Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565-66 (7th Cir. 1998) ("The estoppel that the insurer risks when it elects to do nothing is an estoppel to deny coverage if it turns out that the insurance company did have an obligation to defend and breached that obligation.")**.

Additionally, the parties agreed at the hearing, that although the original complaint included a claim for declaratory relief, this would not trigger a duty to defend on its own without a claim for compensatory loss. The relevant policy language states:

> This insurance does not apply to and **WE** shall not be obligated either to make any payment or to defend any **SUIT** in connection with any **CLAIM** or Suit made against the **INSURED;**
>
> \* \* \*
>
> 8.  Resulting in any **CLAIM** or **SUIT** seeking relief or redress in any form other than compensatory **LOSS**; including punitive damages where permitted by law, nor shall **WE** have any obligation to indemnify the **INSURED** for any costs, fees, including attorney fees, or expenses that the **INSURED** shall become obligated to pay as a result of any adverse judgment for injunctive or declaratory relief; however, we will afford defense to the insured for such **CLAIM** or **SUIT**, if not otherwise excluded, where payment for compensatory **LOSS** is requested;

3

**(Ex. A to Countercl., at USSIC 00022-23)**.

Therefore, the court need not consider whether the policy would cover a claim for injunctive relief in the underlying complaint unless the City can show that a claim for compensatory relief in the underlying complaint would be covered by the policy.

In other words, this case turns on whether USSIC had a duty to defend. The City argued that the underlying suit requested additional relief other than the return of taxes, therefore falling under limits of the policy. **(Doc 17).** Specifically, they point to the prayer for relief in the underlying Complaint requesting "Judgment against Marion in an amount equal to the real estate tax and *other funds* the School District is due . . ." **(Doc 2-3)(emphasis added)**. Because it finds that the insurance contract between the City and USSIC did not create a duty to defend the underlying suit between the City and the School Board, the Court **GRANTS** USSIC's motion for summary judgment.

## ANALYSIS

Summary Judgment is proper only "if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **FED. R. CIV. P. 56(a)**. On Summary Judgment, the Court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. **Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010).** The party making the motion has the burden of establishing that he is entitled to judgment as a matter of law and no factual disputes remain. **Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999)**.

In a diversity case where neither party raises a conflict of law issue, the applicable law is that of the state in which the Federal Court sits. **Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8, 314 F.3d 895 (7th Cir. 2002)**. Illinois law treats matters arising under the terms of insurance

4

policy as question of law, and therefore, subject to resolution on summary judgment. **Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co., 139 F.3d 561, 565 (7th Cir. 1998); Westfield Nat'l Ins. Co. v. Cont'l Community Bank and Trust Co. , 804 N.E.2d 601, 604 (Ill. App. 2d Dist. 2004).**

Here, the parties agree that the relevant issue is whether the insurer had a duty to defend under the policy. To make that determination the court must compare the allegations in the complaint to the policy language. **Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co., 655 N.E.2d 842, 847 (Ill. 1995).** The insurer must provide a defense when the claim falls, or potentially falls, within the ambit of insurance coverage. **Lapham, 655 N.E. at 847.** If there is no potential for coverage, then the insurer has no duty to defend. **Outbound Marine Corp. v. Liberty Mut. Ins. Co., 607 N.E. 1204, 1212 (Ill. 1992).** A complaint that alleges facts that are potentially within the coverage described by the policy will trigger the duty to defend. **Lapham, 655 N.E. at 847.** Any ambiguities in the policy language will be construed against the insurer. **U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co., 578 N.E.2d 926, 930 (Ill. 1991).** The duty to defend may be broader then the duty to indemnify, in that the whole of the complaint need not be within the limits of the policy. **Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co., 139 F.3d 561, 565 (7th Cir. 1998) (citing Hurst-Rosche Eng'rs, 51 F.3d 1336, 1342 (7th Cir. 1995)).** However, there are limits to the above doctrine, and any facts that bring a complaint within the policy limits must be explicitly alleged, not merely possible or hypothetical. **Amerisure Mut. Ins. Co. v. Microplastics, Inc., 622 F.3d 806, 812 (7th Cir. 2010).**

### A. "Other funds" does not allege facts that would create a duty to defend

Here, use of the term "other funds" in the prayer for relief does not create the type of factual allegation that is specific enough to trigger the duty to defend. Without linking the term "other funds" to specific facts that would create a claim for something other than the return of tax

revenue, the Court would be left to speculate and guess as to what factual scenarios would require recovery from "other funds." Without more, "other funds" requires the Court to examine the type of hypothetical facts the court found unavailing in *Microplastics*. The City proposes two hypothetical propositions for what "other funds" could mean in the Complaint. But, even if the Court were to accept the hypotheticals proposed by the City, it is clear that neither of the City's proposals would trigger the duty to defend.

The first hypothetical contemplates that the meaning of "other funds" may be "sums due to the school because it would sought (sic) the amount of interest it might have paid for money it borrowed to replace the tax monies it claims was denied them." (Doc. 17, p. 11). However, this hypothetical is not substantially different from interest on the withheld taxes themselves. Other cases addressing this issue have found that the interest on a principle will likewise not be a loss where the principle itself is not a loss. **Town of Brookhaven v. CNA Ins. Cos., No. cv-86-3569, 1988 WL 23555 at *3 (E.D.N.Y. Feb. 24, 1988) (declining to find that interest on improperly withheld taxes constitutes a loss); see also St. Paul Fire and Marine Ins. Co. v. Village of Franklin Park, 523 F.3d 754, 757 (7th Cir. 2008) ("But we fail to see why the other allegations-things like using the wrong funding formula, not enrolling an actuary, failing to levy sufficient taxes, and misusing the money that should have gone to the fund- are substantially different from wrongful retention.")**. Therefore, the City's argument that "other funds" could potentially mean interest on the School District's loans to cover the lost revenue is unavailing.[1]

The second hypothetical presented by the City's counsel asks the Court to consider whether punitive damages would be considered under "other funds." The City subsequently agreed during oral argument that punitive damages are not covered based on the policy language of exclusion 8,

---

[1] Additionally, the Court agrees that no facts were alleged in the underlying complaint that would put the insurer on notice of such a claim.

which specifically disclaims coverage for punitive damages. Thus, neither hypothetical, even if sufficiently alleged, would create a duty to defend.

### A. The Public Policy Exclusion

The Court also finds USSIC's argument regarding public policy convincing. Under Illinois law, insurance will not cover the loss of wrongfully-retained amounts. **See Level 3 Commc'ns, Inc. v. Fed. Ins. Co., 272 F.3d 908, 910 (7th Cir. 2001).** A "loss," as defined by an insurance contract, will not "include the restoration of an ill-gotten gain." **Id.** That is, an insured cannot avoid the consequences of its wrongful action by taking out insurance on the amounts gained by the wrongful action. Therefore, in addition to not being a "loss" under the policy, the underlying complaint also fails to create a duty to defend due to the exclusion precluding coverage for matters deemed uninsurable as a matter of law.

### CONCLUSION

The Court finds that there is no duty to defend based on a comparison between the language of the underlying complaint and the insurance policy, and because the Court finds no duty to defend, the City's estoppel argument cannot be reached. For the reasons stated above, the Court finds that USSIC has no duty to defend the underlying lawsuit in this case. Accordingly, the Court **GRANTS** USSIC's Motion for Summary Judgment. **(Doc. 14).** Plaintiff's case is **DISMISSED with prejudice.** No claims remain in this case, so the Clerk is **DIRECTED** to enter final judgment against Plaintiff and in favor of Defendants. This case is closed.

**IT IS SO ORDERED.**

**DATE: April 30, 2013**          /s/ *Stephen C. Williams*
                                  **STEPHEN C. WILLIAMS**
                                  United States Magistrate Judge